JOHN McK. GUNN, plaintiff in error, *vs.* ALEXANDER B. HENDRY, defendant in error.

The provisions of the Act of 1870, authorizing defendants to set-off losses resulting from the war, without connecting the plaintiff with the occasion or cause of such losses, is unconstitutional. While we recognize the constitutional competency of the Legislature to provide a

Gunn *vs.* Hendry.

remedy by which an existing equity may be pleaded and proved, we hold that it is not competent for the Legislature to create the equity as well as provide the remedy. The legislature is limited by the Constitution to the remedies for equities in which the agency of the plaintiff may be established, and the loss is the result of acts done or caused to be done by him.

Constitutional law. Relief Act of 1870. Tried before Judge HARRELL. Randolph Superior Court. May Term, 1871.

Hendry averred as follows: On the 1st of January, 1863, he gave Gunn his note, due one day after date, for $2,393 28, in consideration of other notes held by Gunn against him. On the 20th of March, 1863, he paid $600 00 thereon in Confederate currency, which sum was then and there credited on said note. At the same time he offered to pay the balance of the note in that currency, which was all he could get, but Gunn would accept no more than the $600 00. In 1865, Gunn sued him on this note, and in May, 1866, obtained a judgment against him for $1,830 00, principal, and $402 52, besides costs. When he made said note, Hendry owned twenty-one slaves worth $12,600 00, land worth $1,000 00, and other specified personalty, making the total aggregate of $36,750 00. By the late war between the Confederate States against the United States, and in consequence of said war he suffered a loss "of said slaves and other personalty specified, aggregating in value $15,000 00." Said debt was never reduced under the Relief Act of 1868. Hendry now offers to set-off this loss against said judgment, according to the Relief Act of 1870. "Said losses were occasioned by the said John McK. Gunn furnishing means to prosecute said war, equipping troops, and aiding in purchasing arms and furnishing to said troops to prosecute said war." This motion was demurred to, upon the grounds that the 6th and 9th sections of the Relief Act of 13th of October, 1870, were unconstitutional and void. The demurrer was overruled, and that is assigned as error.

Hood & Kiddoo, for plaintiff in error.   Laws impairing obligation of contracts void: Cooley's Cons. Lim., 286, 289, 285; 8th Minnesota Reports, 116, 117; 24th Arkansas Reports, 161; 2d Howard's Reports, 608; 3d, 707; 1st, 311. Mere loss of property no ground of equity:   39th Georgia Reports, 524, 660; 38th, 351; 40th, 326, 493.

B. S. Worrell, for defendant.   Constitutionalty of Relief: 38th Georgia Reports, 350.

Lochrane, Chief Justice.

The main question in this case, is the constitutionality of the set-off and recoupment provisions of the Relief Act of October 13th, 1870.   This Court, in construing the Act of 1868, held that it was competent for the Legislature to provide a remedy to assert equities existing between the parties as a set-off against debts in suit or judgment.   And in the recognition of the elements essential to constitute an equity, such as the Court would enforce, we held it was necessary, before the defendant could avail himself of losses sustained by the war, to connect the plaintiff therewith, under the provisions of the Act in question.   The Legislature has declared that losses resulting from the war are equities, irrespective of any other source of connection whatever, and should be left to the jury to adjudge under the facts in each particular case.   The Legislature bases the equity upon losses by the war, and the question is, whether it is within the constitutional power of the Legislature to declare an equity of this character.   We feel the importance of this question, for it is not one that may be disposed of by a glance, and upon the application of principles arising out of different and distinct conditions and circumstances.   The war has, both *South* and *North*, been the basis of legislation, not invoked by the ordinary machinery of peace.   If it was not for the war, the provision which declares debts due for slaves or the hire thereof, in our Constitution, never could have had recogni-

Gunn *vs.* Hendry.

tion. The war has been the foundation of new rights, and the United States Courts have recognized the condition and its consequences. In our own State, it is known to all who trouble themselves to think about the matter, that the whole country was plunged into a fearful condition, in which every energy was invoked and every element of material wealth strained to meet the crisis; all the people united in the struggle, and everything was at the discretion of power to beat back the military forces desolating the country. In this time of gloom and danger, new and unknown laws were enacted, and the war waging, was the cause of these enactments. The decision of this Court during the year 1864, contains many illustrations of the fact stated.

If A owed B a sum of money, and A, by his acts, causes loss or damage to B, we can easily recognize B's right to set-off the damage occasioned by A, as against the enforcement of his demand on B. This principle of equitable justice is apparent. But when a riot or rebellion gets up, in which both A and B are engaged, and the fire and collision of such riot, A has his property destroyed, and the legislative power declares such loss an equity which A may plead to the demand of B, the reasons for such legislation, and the legality of such plea, becomes a question not easily disposed of upon principle; for the power of the Legislature must be recognized in the premises, and our views as legislators are not our views as Judges. During the war we had Stay laws, after the war, Relief, and the question arising upon them was argued before this Court by the ablest intellects in Georgia, Mr. Stephens coming before the Court at Milledgeville to vindicate the legislative power in the premises. And the Court paused on the question, for it involved deep and important principles. Men whose opinions float from their very levity upon the surface, may utter their opinions of the unconstitutionality of Acts; but to declare the power of the Legislature illegally exercised, is a solemn matter, and needs to be weighed with careful consideration. Coke, in speaking

of the powers of Parliament, concedes to it powers of limitless extent. Hale recognizes the overwhelming supremacy of the Parliament, and Sir John Fortesque declined to answer the limitation of its privileges, they were so high and mighty in their nature. Now, the Georgia Legislature, over the matters of its rightful jurisdiction, has powers delegated by the people, as strong and unlimited. The Constitution is a declaration of rights and division of powers; but on the subject of making laws, the Legislature has power to make all laws consistent with the Constitution of the State, and not repugnant to the Constitution of the United States, *which they shall deem necessary and proper for the welfare of the State*. The boundary of the power, when not conflicting with the Constitutions, is as broad as the State, and as unlimited as the discretion of the General Assembly. The Constitution of this State does not contain a sentence which could be twisted into any limitation on the right to declare the *losses* by the *war* an equity which the defendant might plead, and move to set-off against a debt sued against him; and the limitation, if it exists at all, exists in the United States Constitution, prohibiting any law impairing the obligation of contract. And the limitation under this provision is not so manifest. If there had been no war, all these laws would have been unnecessary. But there was a war which, under United States laws, was regarded a rebellion of our people. And rebellion changes the ordinary channels of law. Out of it has grown certain conditions which, in the judgment of the General Assembly, needed protection to the debtor class. In 1865, this land was one wilderness of desolation, covered with a people ruined, who had not been the authors of the misfortunes around them. To have administered naked law by the old standard, would have levied and sold the lands for a song, and turned out the women to go in rags, and caused their children to be beggars. It was a necessity that invoked the highest statesmanship of the State. And the first Legislature, composed of men as good and true to their duty as

Gunn *vs.* Hendry.

ever met in the State, deemed it to be right to meet the exigences by the enactment of laws for the relief of the people. The same spirit has pervaded the councils of the commonwealth since. And the right to pass these laws has been sustained. The Ordinance of 1865 let in evidence and equities unknown, except arising out of the results of war. We need not review the reasons for the decision; they were eminently wise. The Act of 1868 has been sustained by a majority of the Court, and the right of the Legislature to provide for the recoupment of an equity which was occasioned by the plaintiff, has passed into the recognized judicial history of this State. And we now approach the last Act of 1870, to discuss, for a moment, the right of the Legislature to create an equity out of losses resulting from the war. The effect of this Act is to allow the defendant a right to set-off his losses in which the plaintiff has had no agency, and to make the plaintiff pay for the losses, by giving him credit for the amount. After a full consideration of the subject, and with a view to embrace the justice of the case, we have come to the conclusion, that the enforcement of these provisions of the Act of 1870, would be to impair the obligation of the contract of the party, by authorizing the defendant to discharge the obligation of the contract, by setting off losses which he had suffered by the war, and not by the act of the plaintiff. While ready to recognize the power of the Legislature to provide a remedy, to plead and prove an existing equity, we do not think it is constitutionally competent for the Legislature to make the equity, as well as provide the remedy for its enforcement. In our judgment, the law is limited by the Constitution, to the equities in which the agency of the plaintiff may be established, as the result of acts done, or caused to be done by him; and when the law goes further, and proposes to declare an equity, it violates the boundary and becomes repugnant to the constitution inhibition. And for these reasons we reverse the judgment of the Court below. Judgment reversed.

WARNER, Judge, concurring.

This was a motion to set-off losses sustained by the war against the plaintiff's judgment, under the provision of the 9th section of the Act of 1870. The plaintiff demurred to the defendant's motion, made in writing, which demurrer was overruled by the Court, and the plaintiff excepted. The decision of the majority of this Court in *Cutts & Johnson vs. Hardee*, does not stand in my way, because I believe the Acts of 1868 and 1870, as applicable to contracts made prior to the 1st of June, 1865, are unconstitutional and void, and the validity thereof may be tested and decided on *demurrer to the defendant's plea.* Inasmuch, therefore, as both of these *entire* Acts, relating to relief of defendants as against debts contracted prior to the 1st of June, 1865, are, in my judgment, unconstitutional and void, I concur in the judgment of the Court in reversing the judgment of the Court below in this case.

McCAY, Judge, concurring.

An examination of the case of *Cutts & Johnson vs. Hardee*, 38 Georgia, 350, and of the various cases decided by this Court under the Relief Act of 1868, will show that we have been careful *not to say*, that an Act of the General Assembly, permitting a defense to be set up to a debt, which defense was, *in fact, no equitable defense*, would be constitutional. Those cases all go on the ground that the defendant had some honest, fair equity, which, by the rules of law, he could not set up, and that the Act of 1868 was intended to give him the right to do this. Our general line of thought in those cases was that the whole object of Courts of justice, was to see to it, that parties get their honest, fair, equitable rights, and that no Act of the State Legislature which had that in view, could be obnoxious to that clause of the Constitution of the United States which prohibits impairing the obligation of contracts. We sustained the Act of 1868, on

the ground that it allowed losses to be proven that were the *fault* of the plaintiff. We held then, and I hold still, that it is competent for the Legislature to furnish to the defendant a remedy for any equitable, honest, fair right he may have against the plaintiff, and that it may do this by permitting him to plead it as a reply to any claim the plaintiff has against him, whether it has been ascertained by a judgment or not. But, as I have said, we have not held and do not hold, that the Legislature may arbitrarily *create* an equity, which does not in truth exist, and permit *that* to be pleaded. To hold this would, I think, be, to run right in the teeth of the Constitution of the United States. The case of Satterlee *vs.* Mathewson, 2 Peters' Reports, 482, and the cases of *Baker vs. Herndon*, 17 Georgia, 568, *Knight vs. Lassiter*, 16 Georgia, 151, *Searcy vs. Stubbs*, 12 Georgia, 437, do not, in my judgment, meet this. In all these cases there was a *bona fide* right; the laws were intended merely to give remedies, for actual, existing, honest claims.

By the settled rules of the law of nations, (which is at last nothing but the reduction into principles of the teaching of nature and relation, as *to what is right*,) the individual citizen is not responsible for the results of war, even to those who have taken no part in it. Much more is this true if both sides have taken part in it. The argument which sets up the hardship of allowing these old debts to be collected out of those who have suffered by the common act of all, confounds the principles of equity and *mercy*. Courts may well deal with the one, but the other is not within their sphere.

If the Legislature may say that A's debt against B may be set-off by B's losses, for which A is not, in reason and fairness, liable, it may say it may be set-off by any arbitrary thing, that it may be *declared* null or paid—right in the teeth of the constitutional inhibition. For these reasons we cannot sustain this part of the Act of October 13th, 1870.